UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Crim. No.: 4:16-cr-00575-RBH |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Willis Terrance Dorsey, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant Willis Terrance Dorsey's [ECF No. 48] motion to suppress. A hearing was held on Defendant's motion on February 6, 2017. For the reasons stated below, Defendant's motion to suppress is **DENIED**.[1]

## Procedural History

This case arose from a traffic stop that occurred on February 2, 2016, on I-20 East in Darlington County, South Carolina. Following the stop, a firearm, marijuana, and a quantity of crack cocaine were discovered during a search of Defendant and the rental car he was driving. As a result of the stop and subsequent search of Defendant and the rental car, Defendant was charged in a three count indictment filed on July 26, 2016. Count one alleged that on February 2, 2016, Defendant possessed with intent to distribute a quantity of cocaine base in violation of 21 U.S.C. §§

---

[1] At the hearing, defense counsel advanced an argument that was not contained in the written motion - that Defendant's statements to law enforcement should be excluded because Defendant was in custody and had not been read his *Miranda* rights. Counsel for the government, however, indicated that the government did not plan to introduce the non-*Mirandized* statement. The statement given at the traffic stop is suppressed by agreement. Defense counsel acknowledged that Defendant gave a subsequent fully *Mirandized* statement but questioned whether it should be excluded under *Oregon v. Elstad*, 470 U.S. 298 (1985) (holding that where the a defendant's initial inculpatory statement made while defendant was in police custody in his home was voluntary, a failure to give *Miranda* admonitions did not bar admissibility of subsequent station house confession made shortly thereafter and preceded by careful admonition and waiver of Miranda rights, notwithstanding failure to advise defendant that prior statement could not be used against him) and offered to brief the matter further. Defense counsel has since filed a separate motion to suppress statements based on an alleged *Miranda* violation and *Oregon v. Elstad*. This Order does not concern the admissibility of any statements under *Oregon v. Elstad* or on the basis of an alleged *Miranda* violation. Those arguments will be addressed in a separate Order.

841(a)(1) and (b)(1)(C). Count two alleged that on February 2, 2016, Defendant, having previously been convicted of a felony, knowingly possessed a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e). Count three alleged that on February 2, 2016, Defendant used and carried a firearm during and relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

Defendant filed a motion to suppress any contraband found during the search arguing that the police officer stopped the vehicle without probable cause and unduly delayed the traffic stop so that a police canine could perform a sniff of the vehicle for drugs. The government filed a response and submitted a video of the traffic stop, which the Court has reviewed.

On February 6, 2017, the Court held a hearing on Defendant's motion to suppress. The government presented the testimony of: 1) the officer who initiated the traffic stop; 2) the officer who handled the drug dog that performed the sniff of the rental car driven by Defendant; and 3) the authorized driver of the rental car driven by Defendant.

**Factual Background**

On February 2, 2016, Defendant was driving a rented 2015 Nissan Altima on I-20 East in Darlington County, South Carolina. Cpl. Swaringer with the Darlington County Sheriff's Office testified that he initiated a traffic stop after observing Defendant cross the far right outside line repeatedly. Defendant did not possess a valid driver's license and only held a beginner's permit. The car was rented by Kimberly Grice from Enterprise on January 18, 2016. Defendant was not an authorized driver on the rental car agreement. The rental car agreement stated "no other drivers permitted." However, Kimberly Grice testified that she had given Defendant permission to drive the car.

The traffic stop was captured on Cpl. Swaringer's dashcam video. The video of the traffic

stop shows that the traffic stop lasted no more than approximately twenty-nine minutes. Cpl. Swaringer asked Defendant for his license and insurance. Defendant was unable to produce a valid driver's license or the rental agreement for the vehicle. Cpl. Swaringer asked Defendant to exit the vehicle. Cpl. Swaringer explained why he pulled Defendant over and asked Defendant a series of questions about his driving and travel that day. Cpl. Swaringer testified that by that point he did not intend to allow Defendant to leave the scene in the rented vehicle because he did not have a driver's license and could not produce the rental agreement.

Cpl. Swaringer testified that he then called for assistance because he had determined through various things he had seen in plain view that he was going to ask Defendant for consent to search the vehicle. Specifically, Cpl. Swaringer testified that he smelled fresh air freshener that seemed like it had been sprayed to mask an odor. Cpl. Swaringer also noticed a package of Swisher Sweet cigars around the center console and several plastic baggies stuffed inside the glove compartment. Cpl. Swaringer testified that Swisher Sweet cigars are commonly used for smoking marijuana.

Cpl. Swaringer asked Defendant for consent to search the vehicle and Defendant declined to give consent. Cpl. Swaringer explained that an officer was going to bring a K-9 unit to conduct a free air sniff around the outside of the vehicle. The K-9 unit (Officer Kyle Hause and Rex) arrived on the scene less than 10 minutes after Cpl. Swaringer pulled Defendant over.

Officer Hause testified that he took Rex around the perimeter of the vehicle and that Rex initially began exhibiting a change in behavior on the passenger side where the window was open. Officer Hause and Rex continued around the front of the vehicle and then proceeded up the driver's side of the car. Officer Hause testified that Rex indicated on the driver's side of the car by touching his nose to the area where he found the strongest odor. As a result of Rex "alerting" on the vehicle,

officers conducted a search.

Searching the vehicle officers discovered a handgun in the center console and loose marijuana scattered throughout the floorboard and on the driver's seat. Defendant was placed under arrest for being a felon in possession of a firearm. During the search of Defendant incident to his arrest, 28 grams of crack cocaine were on Defendant, along with $434.00 in cash.

## Discussion

The government argues that the initial stop was a valid traffic stop based on probable cause because Cpl. Swaringer witnessed Defendant swerve out of his lane on several occasions in violation of S.C. Code Ann. § 56-5-1900. As to the search of the vehicle, the government argues that Defendant lacks standing to challenge the search because Defendant was not an authorized driver on the rental agreement. The government adds that even if Defendant had been an authorized driver, the search of the vehicle was proper based on the totality of the circumstances and the K-9 alert. Finally, the government argues that the discovery of the contraband within the vehicle was inevitable because Defendant would not have been allowed to leave the scene with the car and the vehicle would have been impounded.

**I.      Initial Stop**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Whren v. United States*, 517 U.S. 806, 809 (1996). An automobile stop is subject to the constitutional imperative that it not be "unreasonable" under the circumstances. *Whren*, 517 U.S. at 810. "[T]he decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred." *Id*. In this case, Cpl. Swaringer testified that he stopped the Defendant because he

witnessed Defendant cross the fog line, which would constitute a violation of S.C. Code Ann. § 56-5-1900.  The Court finds Cpl. Swaringer's testimony credible.  Accordingly, because Cpl. Swaringer witnessed Defendant commit a traffic violation, the initial stop of Defendant's vehicle was proper under the Fourth Amendment.

**II.     Standing to Challenge Search**

In *United States v. Wellons*, the Fourth Circuit Court of Appeals held that an unauthorized driver of a rental car has no legitimate privacy interest in the car and, therefore, the search of the rental car could not violate the unauthorized driver's Fourth Amendment rights. *United States v. Wellons*, 32 F.3d 117, 119 (4th Cir. 1994): *see also United States v. Boruff*, 909 F.2d 111, 117 (5th Cir.1990) (driver of rental car had no legitimate expectation of privacy in rental car where driver was not listed as valid driver on rental agreement, even though he had permission of actual renter to drive the car, as agreement expressly forbade use of rental car for illegal purposes and use of car by an unauthorized driver, and driver was aware of both of these restrictions), cert. denied, 499 U.S. 975, 111 S.Ct. 1620, 113 L.Ed.2d 718 (1991); *United States v. Obregon*, 748 F.2d 1371, 1374–75 (10th Cir.1984) (upholding lower court's determination that person not listed as valid driver on rental car agreement had no legitimate privacy interest in the car even though the person had renter's permission to drive car).  In footnote two, the Fourth Circuit acknowledged that Wellons may have had the authorized driver's permission to drive the automobile, but noted that permission from the authorized driver was insufficient because Wellons did not have permission from the rental car company. *Wellons*, 32 F.3d at 119 n.2.

Defendant concedes that *United States v. Wellons* represents the current state of the law in the Fourth Circuit but invites this Court to depart from circuit precedent and adopt the approaches

taken by the Sixth, Eighth, and Ninth Circuits. The Eighth and Ninth Circuit Courts of Appeals have held that an unauthorized driver may have a legitimate expectation of privacy in a rental car if the unauthorized driver can establish that the authorized driver/renter gave him permission to drive the car. *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir.1995); *United States v. Best*, 135 F.3d 1223 (8th Cir. 1998); ; *United States v. Thomas*, 447 F.3d 1191 (9th Cir. 2006). The Sixth Circuit Court of Appeals has employed a totality of the circumstances analysis and held that permission of the authorized driver is one factor the court should consider in determining whether the defendant had a legitimate expectation of privacy in the rental car. *United States v. Smith*, 263 F.3d 571, 586 (6th Cir. 2001).

The Court declines to depart from established Fourth Circuit precedent on this issue. Defendant may have had Ms. Grice's permission to drive the vehicle, but he did not have the permission of Enterprise, the owner of the automobile. *See Wellons*, 32 F.3d at 119 n.2. Because Defendant was not an authorized driver on the rental agreement and did not have the permission of the owner of the vehicle, he did not have an expectation of privacy with respect to the rental car. Accordingly, Defendant lacks standing to challenge the search of the rental car.

### III. **Probable Cause**

Even if Defendant had standing to challenge the search of the rental car, the search was still proper under the Fourth Amendment because officers had reasonable suspicion to detain Defendant so that a K-9 unit could arrive. Further, once the K-9 unit "alerted" on the vehicle, officers had probable cause to search the vehicle for contraband.

Since *Terry v. Ohio*, 392 U.S. 1 (1968), an officer must have reasonable suspicion to briefly detain an individual for investigative purposes. "Reasonable suspicion" is demonstrated when an

officer "point[s] to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity." *United States v. Branch*, 537 F.3d 328, 336 (4th Cir.2008). In assessing reasonable suspicion, courts must "consider the totality of the circumstances" and "give due weight to common sense judgments reached by officers in light of their experience and training." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir.2004).

In this case, Officer Swaringer testified that he noticed an odor of freshly sprayed air freshener, Swisher Sweet cigars, and plastic bags in the glove compartment. Officer Swaringer testified that Swisher Sweet cigars are often used for smoking marijuana. The Court finds Officer Swaringer's testimony credible. Based on the totality of the circumstances, Officer Swaringer had reasonable suspicion to detain Defendant for long enough to allow the K-9 unit to arrive and perform a "free air" sniff around the vehicle.

Even if reasonable suspicion did not exist to detain Defendant until the K-9 unit arrived, Defendant's motion to suppress is due to be denied because the K-9 unit arrived and conducted the "free air" sniff within the time required to issue a traffic citation. A canine sniff is constitutionally acceptable if performed within "the time reasonably required" to issue a traffic citation. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (holding that where lawful traffic stop was not extended beyond time necessary to issue warning ticket and to conduct ordinary inquiries incident to such a stop, another officer's arrival at scene while stop was in progress and use of narcotics-detection dog to sniff around exterior of motorist's vehicle did not rise to level of cognizable infringement on motorist's Fourth Amendment rights, such as would have to be supported by some reasonable, articulable suspicion). This is because a dog sniff is not a search within the meaning of the Fourth

Amendment, and it therefore requires no additional justification. *Caballes*, 543 U.S. at 408–09; *see also United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

The K-9 unit arrived on the scene and performed the "free air" sniff of the vehicle within ten minutes of Officer Swaringer initiating the traffic stop. Defendant was not detained an unreasonable length of time or beyond a time reasonably required to issue a traffic citation; therefore, his brief detention did not violate the Fourth Amendment. *See United States v. McFarley*, 991 F.2d 1188, 1193-94 (4th Cir. 1993) (approving a 38 minute detention while officers awaited the arrival of a K-9 unit); *United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994) (approving a 15 minute detention); *United States v. Robinson*, 221 Fed. Appx. 236, 241 (4th Cir. 2007) (approving a 10 minute detention while officers waited for the K-9 unit to arrive).

Finally, the K-9's positive alert on the vehicle was proper and provided probable cause to conduct a warrantless search of the rental car Defendant was driving. When a trained drug dog "alerts" for the presence of drugs in an automobile, officers then have probable cause to search the automobile without first obtaining a warrant. *United States v. Jeffus*, 22 F.3d at 557. Officer Hause testified that Rex (K-9) was trained to detect narcotics including marijuana. Officer Hause further testified that he and Rex completed a 40 hour training course and that he maintained the training with 16 hours a month of additional training with Rex. Officer Hause testified that Rex gave a positive "alert" on the driver's side of the car by touching his nose to the area where he found the strongest odor. The Court finds Officer Hause's testimony credible, particularly with respect to Rex's training and positive alert on the vehicle driven by Defendant.

Because Rex, a trained drug dog, positively "alerted" to the presence of narcotics in the vehicle Defendant was driving, the officers had probable cause to conduct a search of the vehicle

without first obtaining a warrant. The search, which revealed marijuana scattered throughout the floorboard and driver's seat and a handgun in the center console, was proper under the Fourth Amendment. The search of Defendant incident to his arrest that followed was also proper. *See Weeks v. United States*, 232 U.S. 383, 392 (1914).

## Conclusion

For the reasons stated above, Defendant's [ECF No. 48] motion to suppress is **DENIED**.

**IT IS SO ORDERED**.

February 15, 2017                                          s/ R. Bryan Harwell
Florence, South Carolina                                   R. Bryan Harwell
                                                           United States District Judge